1 **WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Hudson Insurance Company, a Delaware corporation, <br><br> Plaintiff, <br><br> vs. <br><br> Simmons Construction, LLC, an Arizona limited liability company, et al., <br><br> Defendants. | No. CV-12-407-PHX-GMS <br><br> **TEMPORARY RESTRAINING ORDER** |

Pending before the Court is an Application for a Temporary Restraining Order ("TRO") by Plaintiff Hudson Insurance Company ("Hudson"). (Doc. 4). For the reasons stated below, the application is granted in part and a TRO is issued.

## BACKGROUND

On November 9, 2010, Hudson entered into an Indemnity Agreement ("the Agreement") with Defendants Simmons Construction, LLC ("Simmons Construction"), SKS Investments ("SKS"), Todd G. Simmons Revocable Trust ("the Trust"), and Todd Simmons. (Doc. 1-1, Ex. A). Hudson and the Defendants entered into the Agreement pursuant to Hudson's issuance of surety bonds on behalf of Simmons Construction in relation to a number of construction projects in Arizona. (Doc. 6 ¶ 12). Defendants agreed that if Simmons Construction defaulted on its construction projects and the project owners made claims on Hudson under the bonds, Defendants would indemnify Plaintiff for the cost of such claims. (Doc. 1-1, Ex. A). Defendants agreed that they would pay Plaintiff on demand an

1  amount sufficient to discharge any claims made against the bonds, and that failure to do so
2  constituted Default under the Agreement and entitled Plaintiff to injunctive relief for specific
3  performance. (*Id.*). Furthermore, the Agreement grants Plaintiff a security interest in
4  Defendants' assets, to be exercised in the event of a breach, and provides Plaintiff with "free
5  access at reasonable times to the books, records, and accounts" of each of the Defendants.
6  (*Id.*).

7  Plaintiff has received claims against the bonds in two of the four projects, and has
8  substituted a contractor on one of the contracts to ensure that it is completed. (Doc. 6
9  ¶¶ 13–18). Simmons is in default on two other contracts, although claims in relation to these
10 contracts have not yet been filed. (Doc. 6 ¶ 27–33). In addition, numerous claims have been
11 filed by subcontractors and suppliers, totaling over $2,000,000. (Doc. 6 ¶¶ 35–36).
12 Combining the claims that have been filed and those it anticipates will be filed based on
13 default by Simmons Construction, Plaintiff expects its total obligations under the bonds to
14 be $5,625,031.80.

15 Plaintiff seeks a TRO that will 1) enjoin Defendants from selling or otherwise
16 disposing of assets, 2) require Defendants to post $5,625,031.80 in collateral or security, 3)
17 grant a lien in the amount of $5,626,031.80 in favor of Hudson upon all assets of Defendants,
18 4) grant Plaintiff immediate access to Defendants' books and records, and 5) require
19 Defendants to show cause why the TRO should not remain in effect as a Preliminary
20 Injunction. (Doc. 4).

21 A hearing was held on March 13, 2012.

## DISCUSSION

### I. Legal Standard - TRO

24 A plaintiff must establish four elements in order to be granted a preliminary
25 injunction, including "that he is likely to succeed on the merits, that he is likely to suffer
26 irreparable harm in the absence of preliminary relief, that the balance of equities tips in his
27 favor, and that an injunction is in the public interest." *Winter v. Nat't Res. Def. Council,* 555
28 U.S. 7, 20 (2008),  *see* FED. R. CIV. P. 65. The Ninth Circuit considers all of the elements

except for irreparable injury using a sliding scale approach, where "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). The element of irreparable injury is not subject to balance; the moving party must "demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 23 (emphasis in original).

**II.    Analysis**

   **A.    Hearing and Agreement**

At the hearing on March 13, 2012, the parties agreed on a number of issues. Defendant Simmons Construction represented that it would provide Hudson reasonable access to its books and records. Plaintiff conceded that access to records was no longer an issue. Therefore, no TRO will issue regarding access to books and records. The Court notes that the Agreement guarantees Plaintiff access and that Defendants represented that they were providing and would continue to provide such access to Plaintiff.

Defendants and Plaintiff also agreed that the terms of a TRO enjoining Defendants from dissipating assets should nevertheless allow Defendants, including Simmons Construction, SKS, the Trust, and Mr. Simmons, to make expenditures in the ordinary course of business. In addition, Plaintiff agreed that a TRO should allow Defendants to make expenditures on behalf of legal professionals and others in order to pursue their claims in litigation to which they are already parties. Parties disagree as to whether a TRO should issue requiring the Defendants to post collateral and granting them a lien upon Defendants' property. The claims will be discussed in turn.

   **B.    Disposing of Assets**

Plaintiff alleges that Defendants are likely to dissipate their assets, which would then become unavailable even if a subsequent money judgment in Plaintiff's favor were to issue. Although pure economic loss cannot support an application for a Temporary Restraining Order, the possibility that a defendant will dissipate assets, leaving them unavailable, does constitute irreparable harm. *See In re Focus Media Inc.* 387 F.3d 1077 (9th Cir. 2004)

(holding that the prospect of dissipating assets "raises the specter of irreparable harm to the bankruptcy estate if these funds are not frozen"). Defendant is in default on four of the five construction projects at issue. Defendants did not respond until appearing at the hearing, where they conceded that a TRO could issue freezing their assets, so long as it allowed them to make expenditures in the ordinary course of business and continue to pursue legal claims. The court finds that the likelihood that assets will be dissipated is sufficiently likely to support issuance of a TRO.

To obtain a TRO, a plaintiff must also show a likelihood of success on the merits, that the balance of equities tips in its favor, and that a TRO is in the public interest. *See Winter*, 555 U.S. at 20. The Agreement provides that Defendants will indemnify Plaintiff for claims on the bonds, and claims on the bonds have been made. (Doc. 1-1 at 2). Plaintiff's likelihood of success on the merits is high. By allowing Defendants to make expenditures in the ordinary course of business and pursue ongoing litigation, the hardship they would otherwise suffer is mitigated, and the balance of hardship therefore favors issuing a TRO. Likewise, enforcing contractual obligations is in the public interest.

### C. Collateral and Lien

When a surety anticipates paying claims that have been made against its bond, but has not yet made payments, it may enforce equitable provisions of a surety contract. *See Milwaukie Const. Co. v. Glens Falls Ins. Co.*, 367 F.2d 964, 966 (9th Cir. 1966) ("[W]here appellee knew it was going to have liability claims filed against it but did not know the amount of those claims, the legal remedy of money damages would not be adequate."); *see also Safeco Ins. Co. of America v. Schwab*, 739 F.2d 431, 433 (9th Cir. 1984) ("Sureties are ordinarily entitled to specific performance of collateral security clauses."). Since the surety in such situations cannot anticipate the extent of its obligations in advance, and is entitled to be indemnified for all of those obligations, it may enforce the specific performance provisions in the contract. As the Ninth Circuit noted in *Milwaukie Construction,* "It is not essential that the claim of the surety for relief should depend upon the fact that he will incur irreparable injury." 367 F.2d at 966.

Sureties generally seek collateralization though the equitable remedy of *quia timet*, and here Plaintiff has invoked *quia timet* in its application for a TRO. The doctrine of *quia timet* "allows a person to seek equitable relief from future probable harm to a specific right or interest." Blacks Law Dictionary 1367 (9th ed. 2009). District Courts in the Ninth Circuit hearing claims by sureties have granted injunctive relief under the doctrine after a finding on the merits or a default judgment. *See*, *e.g.*, *Suretec Ins. Co. v. Orchard Hills Estates, LLC*, CV-09-0110 (LKK-EFB), 2010 WL 4366205 (E. D. Cal. Oct. 27 2010) (granting default judgment and a *quia timet* injunction); American *Contractors Indem. Co. v. Bigelow*, CV-09-8108 (HRH), 2011 WL 5546052 (D. Ariz. Apr. 11, 2011) (granting summary judgment and a *quia timet* injunction). Plaintiffs have provided no case, and the Court has not found one, in which the extraordinary remedy of a Temporary Restraining Order has been issued based on the doctrine of *quia timet*.[1]

Plaintiff cites a number of cases from state courts or federal courts outside the Ninth Circuit which allegedly endorse the proposition that a *quia timet* injunction is available to a surety because "traditional remedies are not sufficient." (Doc. 5 at 4). In none of these cases did the court issue a TRO. *See*, *e.g.*, *Escrow Agents Fidelity Corp. v. Superior Court*, 4 Cal App. 4th 491, 5 Cal Rptr. 2d 698 (Cal. App. 2 Dist. 1992) (overruling order of state trial court sustaining a demurrer); *Western Ca. & Sur. Co. v. Biggs*, 217 F. 2d 163 (denying appeal to set aside equity judgment that had been filed ten years after the judgment had been entered); *Doster v. Continental Cas. Co.* 268 Ala. 123, 106 So. 2d 83 (1958) (upholding trial court's overruling of demurrer). Moreover, all of them predate *Winter*, in which the Supreme Court emphasized that a TRO will not issue unless a party can "demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 23 (emphasis in original). Whether Defendants will be required to collateralize Plaintiff through a TRO depends on whether it is likely that Plaintiff will otherwise suffer irreparable injury.

---

[1] As discussed below, District Courts have issued TROs granting sureties collateralization. These courts have relied upon the standards for issuing a TRO as set forth in the Federal Rules of Civil Procedure, not on the common-law doctrine of *quia timet*.

- 5 -

Some district courts have indeed found that loss of collateralization between the time a surety files a claim and the time a judgment is reached on the merits constitutes irreparable harm adequate to support issuance of a preliminary injunction or TRO. Usually, such courts find that because the indemnitor could otherwise dissipate assets, a preliminary injunction was necessary to protect Plaintiff's interest in being indemnified under the surety bond. For example, the Western District of North Carolina has held that a plaintiff should be collateralized through a TRO because, among other reasons, "Plaintiff has raised sufficient doubt as to whether Defendants would be able to satisfy such judgment." *International Fidelity Ins. Co. v. Waterfront Grp. NC, LLC*, CV-11-00116 (GCM), 2011 WL 4715155 (W.D.N.C. Oct. 6, 2011). The Eastern District of North Carolina, in granting such a preliminary injunction, wrote that "the court notes that the preliminary injunctive relief requested in this case is not an order preventing defendants' transfer or disposition of any specific assets." *First National Ins. Co. of America v. Sappah Brothers, Inc.*, 771 F. Supp. 2d 569, 575 n.5 (2011). Others have noted that sureties bargained-for status as secured creditor would be lost if a indemnitor were not compelled to collateralize the surety through a preliminary injunction. *See The Hanover Ins. Co. v. Holley Construction Co. & Assocs., Inc.*, CV-11-41 (CDL), 2012 WL 398135, at *6 (M.D. Ga. Feb. 7, 2012) ("If the surety is deprived of the bargained-for collateral security, it will face the risk of being a general unsecured creditor of Defendants and of not being able to collect.") (internal quotation omitted). Others hold that the surety's harm is irreparable because the surety contract says it is irreparable. *See Great American Ins. Co. v. SRS, Inc.*, CV-11-970 (M.D. Tenn. Dec. 23, 2011) ("The Indemnity Agreement specifically states that 'the [Indemnitors] acknowledge that the failure of the [Indemnitors] to deposit with [Great American], immediately upon demand, the sum demanded by [Great American] as payment *shall cause irreparable harm*'") (emphasis in original).

Neither the Ninth Circuit itself nor the District Courts within the Ninth Circuit have been swayed by these arguments. *See Hanover Ins. Co. v. TLC Investing, LLC*, 11-CV-711 (JCM) 2011 WL 3841299, at *1 (D. Nev. Aug. 26, 2011) (denying motion for

reconsideration of denial of preliminary injunction when insurer provided three cases classifying the harm a surety suffers as "irreparable" because "[n]one of the cases . . . are Ninth Circuit cases that would be binding upon this court"). A TRO prohibiting Defendants from dissipating their assets adequately protects Plaintiff from the potential that the assets will not be available in the future. Although collateralization may improve Plaintiff's position relative to other creditors should Defendants eventually file for bankruptcy protection, Plaintiff has not made any effort to show that such an outcome is "likely," or that it is entitled to such preference. Finally, the fact that the Agreement uses the term "irreparable harm" does not support the extraordinary remedy of a TRO. Although Plaintiff does not at this time know the extent of the obligations for which it must be indemnified, there is no question that those obligations are purely economic. (Doc.4 at 4). "Economic damages are not traditionally considered irreparable because the injury can later be remedied by a monetary award." *Jones v. Bank of America, N.A.*, 09-CV-2129 (JAT) 2010 WL 2572997, at *12 (D. Ariz. June 22, 2010). Plaintiff may very well be entitled to specific performance under the Agreement at some point. The extraordinary remedy of a TRO, however, is not available for collateralization.

### D. Requirement to Show Cause and Bond

At the hearing, Defendants were informed that they would be required to appear and show cause, if any, why the TRO should not remain in effect as a Preliminary Injunction pending disposition of this matter. They will be required to do so. Further, they conceded that a bond is not necessary.

**IT IS THEREFORE ORDERED** that Plaintiff's Application for Temporary Restraining Order and Preliminary Injunction (Doc. 4) is **granted in part and denied in part**. A Temporary Restraining Order is hereby issued ordering that:

1. Defendants are enjoined from selling, transferring, wasting, encumbering or otherwise disposing of their assets and property except in the ordinary course of business. Defendants are permitted to make expenditures on behalf of legal professionals and others in order to pursue their claims in litigation to which they are already parties.

2. Defendants will be required to appear and show cause, if any, why the TRO should not remain in effect as a Preliminary Injunction pending disposition of this matter.

DATED this 14th day of March, 2012.

_____
G. Murray Snow
United States District Judge